IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MYA THOMAS<br>45 Redstone Street, Unit B 725<br>Republic, PA 15475<br><br>Plaintiff,<br><br>v.<br><br>BON SECOURS MERCY HEALTH, INC.<br>1932 Niles Cortland Rd<br>Warren, OH 44484<br><br>**Serve also:**<br>Corporation Service Company<br>1160 Dublin Rd., Ste. 400<br>Columbus, OH 43215<br><br>Defendant. | CASE NO.<br><br>JUDGE:<br><br>**<u>COMPLAINT FOR DAMAGES AND REINSTATEMENT</u>**<br><br>**<u>Jury Demand Endorsed Herein</u>** |

Plaintiff, Mya Thomas, by and through undersigned counsel, as her Complaint against Defendant, states and avers the following:

## PARTIES AND VENUE

1. During the events detailed herein, Thomas was a resident of the city of Newton Falls, County of Trumbull, State of Ohio.
2. Thomas is a current resident of Republic, Pennsylvania.
3. Bon Secours Mercy Health, Inc. ("BSMH") is a Maryland-registered, foreign corporation that operates a place of business located at 1932 Niles Cortland Rd, Warren, OH 44484
4. BSMH was at all times hereinafter mentioned an "employer" within the meaning of Ohio R.C. § 4112.01(A)(2).

5. This Court has original subject matter jurisdiction over Thomas' federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1981 and Title VII.
6. This Court has supplemental jurisdiction over Thomas' state law claims pursuant to 28 U.S.C. § 1367 because her state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.
7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## ADMINISTRATIVE HISTORY

8. Within 300 days of the conduct alleged below, Thomas filed a Charge of Discrimination against BSMH operating at 1932 Niles Cortland Rd, Warren, OH 44484.
9. Thomas has properly exhausted her administrative remedies.
10. The EEOC Right to Sue letter is attached as Exhibit 1.

## FACTS

11. Thomas is a former employee of BSMH.
12. Thomas is African American/Black.
13. Thomas is a member of a protected class based on race.
14. BSMH hired Thomas as a Medical Assistant on or about July 14, 2025.
15. Thomas worked at BSMH's Warren, Ohio facility.
16. Thomas's job duties included rooming patients, charting, and assisting with in-office procedures.
17. Thomas was qualified for her position.
18. Jennifer Long was Thomas's supervisor.
19. Long is white.
20. Bennett was Thomas's coworker.

21. Bennett worked as a Medical Assistant.

22. During Thomas's interview, Long and Bennett warned Thomas that the women in the pod caused drama.

23. Thomas told Long and Bennett that she did not engage in workplace drama.

24. Long nevertheless assigned Thomas to the pod that Long and Bennett had already identified as problematic.

25. After Thomas began working in the pod, Thomas was ignored, excluded, and treated differently by coworkers.

26. Thomas did not refuse to communicate with coworkers about work.

27. Thomas did not refuse to perform her job.

28. Thomas did not refuse to assist patients.

29. Thomas chose not to participate in non-work-related conversations, gossip, and workplace drama.

30. Defendant treated Thomas's quietness as a problem.

31. Defendant treated Thomas's seriousness as a problem.

32. Defendant treated Thomas's facial expression as a problem.

33. Defendant treated Thomas's refusal to participate in workplace gossip as a problem.

34. On or about August 27, 2025, Long gave Thomas a verbal coaching.

35. The verbal coaching was not about Thomas's patient care.

36. The verbal coaching was not about Thomas's charting.

37. The verbal coaching was not about Thomas's ability to perform her job.

38. The verbal coaching was about Thomas's "disposition" and "demeanor."

39. Long told Thomas that Thomas appeared as if she did not want to be there.

40. Thomas explained that she was not angry, hostile, or unwilling to work.
41. Thomas explained that her focused facial expression did not mean that she was unhappy or unprofessional.
42. Thomas also told Long that patients had complimented Thomas's demeanor and bedside manner.
43. Long disregarded Thomas's explanation.
44. Long continued to focus on Thomas's face, demeanor, and perceived attitude.
45. Long told Thomas that she knew what "Resting Bitch Face" meant and that Thomas's demeanor was "more than" that.
46. Long's comments and criticisms reflected racialized assumptions about Thomas's demeanor, attitude, and personality.
47. Defendant treated Thomas, a Black woman, as hostile, aggressive, and unapproachable despite Thomas's professional performance and positive patient interactions.
48. Thomas complained to Long that she felt targeted and harassed based on her race.
49. Thomas complained that coworkers appeared to know what Thomas had discussed privately with Long.
50. Thomas reasonably believed that Long was sharing Thomas's private complaints with coworkers.
51. Thomas reported that coworkers made comments about isolating her, including comments about putting Thomas "in a hole by herself."
52. Thomas also reported comments including "be like Trump and build the wall," which Thomas understood as a reference to excluding or walling her off.
53. Thomas's complaints were protected activity.

54. Long did not conduct a fair investigation into Thomas's complaints.
55. Long did not stop the harassment.
56. Long did not protect Thomas from retaliation.
57. Instead, after Thomas complained, Thomas was subjected to increased scrutiny.
58. After Thomas complained, coworkers continued making comments about Thomas.
59. After Thomas complained, coworkers continued objecting to Thomas's refusal to participate in their conversations.
60. Thomas documented her own version of events because Long's documentation was incomplete and misleading.
61. Thomas documented her own version of events because she believed Defendant was building a false record against her.
62. On or about September 18, 2025, Thomas again met with Long.
63. During that meeting, Thomas disputed Long's version of prior events.
64. Thomas again explained that the criticisms against her were not about job performance.
65. Thomas again explained that she felt targeted based on race.
66. Thomas again explained that she felt harassed based on race.
67. On or about September 19, 2025, an issue arose involving a medication room door.
68. Defendant later claimed that Thomas failed to respond when asked about the medication room door and then responded in a hostile and dismissive tone.
69. Defendant's claim was false.
70. Thomas did not leave the medication room door open.
71. Thomas did not create the medication room door issue.
72. Thomas did not respond aggressively about the medication room door.

73. Linda was Thomas's coworker.
74. Linda (last name unknown) worked as a Licensed Practical Nurse.
75. Linda is white.
76. Linda used profanity in connection with the medication room door issue.
77. Linda was not terminated.
78. Linda was not placed on unpaid administrative leave.
79. Linda was not treated the same way Thomas was treated.
80. On or about September 23, 2025, Thomas again complained to Long that she felt targeted and harassed based on race.
81. Thomas asked Long how to make an internal complaint.
82. Thomas's September 23, 2025 complaint was protected activity.
83. Later that same day, Thomas and Linda crossed paths in a hallway.
84. Thomas did not assault Linda.
85. Thomas did not threaten Linda.
86. Thomas did not attempt to strike Linda.
87. Thomas did not create an unsafe workplace.
88. Linda escalated the interaction.
89. Linda loudly asked whether Thomas was going to cuss at her.
90. Linda loudly asked whether she needed to call Jen.
91. Thomas responded, "No, girl," and continued working.
92. Linda and Elizabeth Bennett, another coworker, then made or supported false complaints against Thomas.
93. Linda and Bennett falsely portrayed Thomas as profane, threatening, aggressive, and unsafe.

94. Defendant accepted Linda's and Bennett's version of events.

95. Defendant rejected Thomas's version of events.

96. Defendant ignored Thomas's complaints.

97. Defendant ignored Thomas's documentation.

98. Defendant ignored the fact that Thomas had complained about the same coworkers whose accusations Defendant credited.

99. Defendant ignored the racially charged context in which Thomas was being portrayed as an aggressive Black woman.

100. Defendant did not conduct a fair investigation.

101. Defendant did not conduct a neutral investigation.

102. Defendant did not conduct an investigation designed to determine the truth.

103. Defendant knew Thomas had evidence supporting her version of events.

104. Defendant refused to meaningfully consider Thomas's evidence.

105. On or about September 25, 2025, Defendant placed Thomas on unpaid administrative leave.

106. Defendant placed Thomas on unpaid administrative leave shortly after Thomas complained that she was targeted and harassed based on her race.

107. Defendant placed Thomas on unpaid administrative leave shortly after Thomas asked how to make an internal complaint.

108. On or about September 30, 2025, Defendant terminated Thomas's employment.

109. Long informed Thomas of her termination.

110. Long participated in the termination decision.

111. Defendant claimed that Thomas violated Bon Secours's Code of Conduct.

112. Defendant claimed that Thomas was hostile, profane, threatening, and unsafe.

113. Defendant's stated reasons were false.

114. Defendant's stated reasons were pretextual.

115. Defendant treated Thomas less favorably than similarly situated white coworkers.

116. Defendant treated Linda more favorably than Thomas.

117. Defendant treated Bennett more favorably than Thomas.

118. Defendant terminated Thomas because of her race.

119. Alternatively, Defendant terminated Thomas because they accepted and relied on racialized stereotypes about Thomas.

120. Defendant terminated Thomas because she complained about harassment, targeting, and discriminatory treatment.

121. Defendant's decision to terminate Thomas shortly after her protected complaints supports retaliation.

122. Defendant's refusal to conduct a fair investigation supports pretext.

123. Defendant's refusal to consider Thomas's evidence supports pretext.

124. Defendant's more favorable treatment of white coworkers supports pretext.

125. Defendant's shifting and exaggerated characterization of Thomas as aggressive, threatening, and unsafe supports pretext.

126. As a direct and proximate result of Defendant's conduct, Thomas suffered and will continue to suffer damages, including lost wages, lost benefits, emotional distress, humiliation, reputational harm, and loss of employment opportunities.

**COUNT I: <u>RACE DISCRIMINATION IN VIOLATION OF TITLE VII</u>**

127. Thomas restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

128. Thomas is African American/Black.

129. Thomas is a member of a statutorily protected class based on her race.

130. Throughout her employment, Thomas was fully competent to perform the essential functions of her Medical Assistant position.

131. BSMH treated Thomas differently than similarly situated non-African-American employees.

132. BSMH subjected Thomas to heightened scrutiny regarding her demeanor, disposition, facial expressions, and perceived attitude.

133. BSMH did not subject similarly situated non-African-American employees to the same level of scrutiny for comparable conduct.

134. BSMH accepted false and exaggerated complaints against Thomas from non-African-American coworkers.

135. BSMH. refused to fairly consider Thomas's version of events.

136. BSMH refused to fairly consider Thomas's documentation and evidence.

137. BSMH treated non-African-American employees more favorably than Thomas when investigating workplace conduct.

138. BSMH treated non-African-American employees more favorably than Thomas when imposing discipline.

139. On or about September 25, 2025, BSMH. placed Thomas on unpaid administrative leave.

140. On or about September 30, 2025, BSMH. terminated Thomas's employment.

141. Similarly situated non-African-American employees were not terminated for comparable or more serious conduct.

142. BSMH terminated Thomas because of her race.

143. BSMH violated Title VII by discriminating against Thomas because of her race.

144. As a direct and proximate result of BSMH's race discrimination, Thomas suffered and will continue to suffer economic damages.

145. As a direct and proximate result of BSMH's race discrimination, Thomas suffered and will continue to suffer emotional distress damages.

146. BSMH acted with malice and/or reckless indifference to Thomas's protected rights.

147. Thomas is entitled to compensatory damages, punitive damages, attorney fees, costs, interest, and all other relief available under Title VII.

**COUNT II: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

148. Thomas restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. Thomas is a member of a statutorily protected class based on her race.

150. Throughout her employment, Thomas was fully competent to perform the essential functions of her Medical Assistant position.

151. BSMH treated Thomas differently than similarly situated non-African-American employees.

152. On or about September 25, 2025, BSMH. placed Thomas on unpaid administrative leave.

153. On or about September 30, 2025, BSMH. terminated Thomas's employment.

154. BSMH terminated Thomas because of her race.

155. BSMH violated § 1981 by discriminating against Thomas because of her race.

156. As a direct and proximate result of BSMH's race discrimination, Thomas suffered and will continue to suffer economic damages.

157. As a direct and proximate result of BSMH's race discrimination, Thomas suffered and will continue to suffer emotional distress damages.

158. BSMH acted with malice and/or reckless indifference to Thomas's protected rights.

159. 42 U.S.C. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts, including employment contracts, without respect to race.

160. As a direct and proximate result of BSMH's intentional violation of 42 U.S.C. § 1981, Thomas has suffered economic loss and emotional distress and are entitled to recover compensatory damages, punitive damages, back pay, front pay, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT III: <u>RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.02</u>**

161. Thomas restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

162. Thomas is a member of a statutorily protected class based on her race.

163. Throughout her employment, Thomas was fully competent to perform the essential functions of her Medical Assistant position.

164. BSMH treated Thomas differently than similarly situated non-African-American employees.

165. On or about September 25, 2025, BSMH. placed Thomas on unpaid administrative leave.

166. On or about September 30, 2025, BSMH. terminated Thomas's employment.

167. BSMH terminated Thomas because of her race.

168. BSMH violated R.C. § 4112.02 by discriminating against Thomas because of her race.

169. As a direct and proximate result of BSMH's race discrimination, Thomas suffered and will continue to suffer economic damages.

170. As a direct and proximate result of BSMH's race discrimination, Thomas suffered and will continue to suffer emotional distress damages.

171. BSMH acted with malice and/or reckless indifference to Thomas's protected rights.

172. Thomas is entitled to compensatory damages, punitive damages, attorney fees, costs, interest, and all other relief available under R.C. § 4112.

**COUNT IV: <u>RETALIATION IN VIOLATION OF TITLE VII, 42 U.S.C. 2000e-3</u>**

173. Thomas restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

174. Thomas complained to BSMH about the harassment, targeting, and discriminatory treatment she was experiencing.

175. Thomas complained to Long that she felt targeted.

176. Thomas complained to Long that she felt harassed.

177. Thomas complained to Long that coworkers appeared to know what Thomas had discussed privately with Long.

178. Thomas asked Long how to make an internal complaint.

179. Thomas's complaints constituted protected activity.

180. Thomas reasonably believed she was opposing unlawful discriminatory conduct.

181. BSMH knew that Thomas engaged in protected activity.

182. Subsequent to Thomas's complaints, BSMH failed to take prompt remedial action.

183. Subsequent to Thomas's complaints, BSMH failed to conduct a fair investigation.

184. Subsequent to Thomas's complaints, BSMH ratified the discriminatory and retaliatory conduct that Thomas suffered.

185. Subsequent to Thomas's complaints, BSMH accepted false and exaggerated complaints against Thomas.

186. Subsequent to Thomas's complaints, BSMH placed Thomas on unpaid administrative leave.

187. Subsequent to Thomas's complaints, BSMH terminated Thomas's employment.

188. BSMH's actions were retaliatory in nature based on Thomas's opposition to unlawful discriminatory conduct.

189. BSMH terminated Thomas because she complained about harassment, targeting, and discriminatory treatment.

190. BSMH terminated Thomas because she opposed conduct that she reasonably believed violated Title VII.

191. BSMH violated Title VII by retaliating against Thomas.

192. Thomas suffered emotional distress as a result of BSMH.'s conduct and is entitled to emotional distress damages pursuant to Title VII.

193. As a direct and proximate result of BSMH's retaliation against Thomas, Thomas suffered and will continue to suffer economic damages.

194. As a direct and proximate result of BSMH's retaliation against Thomas, Thomas suffered and will continue to suffer emotional distress damages.

195. BSMH acted with malice and/or reckless indifference to Thomas's protected rights.

196. Thomas is entitled to compensatory damages, punitive damages, attorney fees, costs, interest, and all other relief available under Title VII.

**COUNT V: <u>RETALIATION IN VIOLATION OF R.C. § 4112.02(I)</u>**

197. Thomas restates each and every prior paragraph of this complaint, as if it were fully restated herein.

198. As a result of Defendant's discriminatory conduct described above, Thomas complained about race discrimination.

199. Subsequent to Thomas's reporting of racial discrimination to the Defendant, Defendant retaliated against Thomas by terminating her employment.

200. Defendant's actions were retaliatory in nature based on Thomas's opposition to the unlawful discriminatory conduct.

201. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person Thomas opposed any unlawful discriminatory practice.

202. As a direct and proximate result of Defendant's conduct, Thomas suffered and will continue to suffer damages.

**DEMAND FOR RELIEF**

WHEREFORE, Mya Thomas demands from Defendant the following:

(a) An order requiring BSMH to restore Thomas to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Thomas for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Thomas's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
3 Summit Park Dr. Ste. 200
Independence, OH 44131
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: fred.bean@spitzlawfirm.com

*Attorney for Plaintiff*

**JURY DEMAND**

Plaintiff, Mya Thomas, demands a trial by jury for the maximum number of jurors permitted.

*/s/ Fred M. Bean*
Fred M. Bean (0086756)
**SPITZ, THE EMPLOYEE'S LAW FIRM**